[Crim. No. 7014. Second Dist., Div. Two. Apr. 10, 1961.]

THE PEOPLE, Respondent, v. RAYMOND BALDWIN, Appellant.

Raymond Baldwin, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

FOX, P. J.—In an information defendant was accused of (1) kidnaping John Thomen, in violation of section 207, Penal Code; (2) robbing him, in violation of section 211; and (3) robbing Bob E. Bradley. It is further alleged, with respect to the latter two counts, that defendant was armed with a deadly weapon. Defendant plead not guilty.

On September 18, 1959, an amended information was filed charging defendant with kidnaping John Thomen for the purpose of robbery, in violation of section 209 of the Penal Code. This charge was substituted in place of Count I in the first information. Defendant entered a plea of not guilty to each count. He was tried by a jury and found guilty on each count in the amended information. The jury also determined that he had been armed with a deadly weapon at the time of his commission of the offenses alleged in Counts II and III. Defendant's motion for a new trial was denied. He has appealed from the judgment and the order denying his motion.

Around midnight of April 9, 1959, defendant hailed a taxicab on Hollywood Boulevard driven by John Thomen. Defendant gave the driver an address in the 4500 block of

Santa Monica Boulevard, stating that he was going to a small hotel. Upon arriving, it was discovered that there was no hotel in that block. Thereupon defendant placed a note upon the front seat of the cab and told Thomen to read it. Thomen turned the light on and read it. The note was as follows: "Don't try to be brave. This is a holdup. Just give me your money." Thomen turned around and was confronted with a gun in defendant's hand. He said, "Give me your money." The cab driver gave him approximately $5.00, stating that was all he had. Defendant indicated that was not enough. He told the cab driver he would have to help him hold up another place, and directed Thomen to the Hollywood Hotel, around the 5500 block on Hollywood Boulevard. It was locked, and the clerk would not let them in. Defendant then directed the cab driver further down the street to the Coronet Motel. The clerk there opened the door and let them in. Defendant informed the clerk that this was a holdup. Defendant directed Thomen to take the money out of the till, which he did. Defendant also commanded the clerk to hand over his wallet, from which defendant extracted a few dollars. He said to the clerk, "Don't call the police for 20 minutes or otherwise there is going to be a dead cab driver." Defendant then directed the cab driver to take him to 5th and Wall Streets, which is only two or three blocks from the Greyhound Bus Depot. Upon arriving there, they observed the presence of police, and defendant directed the cab driver to 8th and Hill Streets, and then back again. Upon their return, the police were gone, so defendant said to the cab driver, "Drive about two or three blocks straight ahead and then you are on your own." Defendant jumped out of the cab. The cab driver had a good opportunity to look at the defendant and there was no question in his mind as to his identity. Bradley, the motel clerk, was also positive in his identification of defendant. Both of these witnesses observed defendant at close range and in good light.

Officer Munkres, of the Hollywood Detective Bureau, testified that defendant admitted his participation in the two robberies, and that he forced the cab driver to take him to downtown Los Angeles, where he later boarded a bus to San Diego. It was there that he was apprehended in possession of a gun. He admitted to the officer that it was the gun he had used in the two Hollywood robberies. He told the officer that he bought the gun in Seattle.

On the witness stand, defendant denied having committed the crimes and testified that he just passed through Los Angeles on his way to San Diego. He said he was on his way to register the gun when he was arrested. He explained that he bought the gun in Seattle for target practice. He claimed that the bus stopped at the bus terminal in Los Angeles for only "approximately 15 minutes for chow." He denied making any admissions to the police with respect to any of these charges. He maintained that he only told the police he knew nothing of these crimes.

In seeking a reversal defendant makes numerous complaints. However, there is no merit in any of them. His basic defense is mistaken identity, for he claims that he knew nothing about any of these offenses. However, he was positively identified by the cab driver and the clerk of the Coronet Motel. Both of these men had a good opportunity to observe him. Their testimony is obviously sufficient to establish his identity and to sustain defendant's conviction on Counts II and III. (*People* v. *McNeal*, 123 Cal.App.2d 222, 224 [266 P.2d 529].)

Defendant charges that statements made by witnesses were not true. This was a matter for the jury's determination, for it is their responsibility to pass on the credibility of the witnesses and the weight to which their testimony is entitled. This court cannot reevaluate the credibility of the witnesses nor reweigh the evidence. (*People* v. *Gould*, 111 Cal.App.2d 1, 8 [243 P.2d 809].)

With respect to Count I, which charges kidnaping for the purpose of robbery, it should be noted that the kidnaping took place after the first robbery. Prior thereto defendant directed the cab driver to take him to a specific location, which he did freely although by reason of fraud. When they arrived there defendant robbed him. The kidnaping must therefore be predicated on defendant's conduct after the robbery. Defendant's statements to Thomen indicated that he was kidnaping him for the purpose of having his assistance in robbing someone else. This is rather an unusual situation in that in the ordinary case we find kidnaping and robbery of the same person. However, the statute does not expressly state that the robbery and kidnaping must relate to the same person. Both situations are equally dangerous and represent the type of conduct to which the Legislature intended to direct heavier penalties. (*People* v. *O'Farrell*, 161 Cal.App.2d 13, 22 [325 P.2d 1002].) Also, it could fairly be inferred from

the evidence by the trier of fact that the defendant had another purpose in exercising control over the cab driver, namely, assistance in making his escape. Where the kidnaping facilitates escape from a robbery it is within the ban of section 209.

In *People* v. *Randazzo,* 132 Cal.App.2d 20, at page 24 [281 P.2d 289], the court said: "Where a kidnaping takes place after the actual perpetration of a robbery such kidnaping may be a kidnaping for the purpose of robbery if it may reasonably be inferred that the transportation of the victim was to effect the escape of the robber or to remove the victim to another place where he might less easily sound an alarm." This principle was quoted with approval in *People* v. *Randazzo,* 48 Cal.2d 484, 489 [310 P.2d 413]. It is clear that upon either theory there is ample evidence to sustain the conviction of kidnaping for the purpose of robbery (Count I).

Defendant complains that the amended information is void because it was not subscribed by the deputy district attorney who tried the case; that it was not filed within the statutory time; that it had been changed to make it appear that it was filed in time; that it is void because "the amended information was never sent back to the committing magistrate of the municipal court." Obviously, there is no merit in any of these complaints. A supplemental transcript shows that an amended information was filed on September 18, 1959, charging kidnaping for the purpose of robbery, in violation of section 209 of the Penal Code, in Count I. This new charge was substituted in place of the former charge of "Kidnaping" in violation of section 207, Penal Code. The reporter's transcript of the preliminary hearing which has been filed with this court contains evidence that warranted filing the new charge, with the court's permission, pursuant to the provisions of section 1009, Penal Code. On the day the amended information was filed, defendant was rearraigned and pled not guilty to all counts. The case was then continued to September 21st for trial. Whether the prosecution should be permitted to amend an information is a matter within the sound discretion of the trial court and its discretion will not be overruled in the absence of a clear abuse thereof. (*People* v. *Stoddard,* 85 Cal.App.2d 130, 138 [192 P.2d 472].) There is no showing at all of any abuse of discretion in this matter.

Defendant makes the charge that three judges before whom he appeared on various aspects of this case were prejudiced against him. We have examined the supplemental transcripts

covering these several appearances and find no support whatever for such charges. He also claims that he was denied the right to subpoena witnesses in his own behalf. We find nothing in the record to support this charge.

■   Defendant complains that he was illegally arrested in San Diego . He did not raise the point at the trial level and thus deprived the prosecution of the opportunity of justifying the actions of the police. This failure on his part precludes him from now raising the question for the first time. (*Robison* v. *Superior Court*, 49 Cal.2d 186, 187 [316 P.2d 1].)

■   Finally, defendant complains that counsel was forced upon him. It appears from the supplemental transcript that initially the public defender had been appointed to represent defendant. It seems that defendant had difficulty with the particular deputy assigned to his case; that defendant insisted on directing it rather than permitting the deputy public defender to do so. As a result, the public defender declined to further represent defendant. The court thereupon appointed Joe Rosen, Esq., to represent him. Mr. Rosen was thorough and diligent in his examination of witnesses and adequately represented defendant.

The record discloses ample evidence to sustain defendant's conviction on all counts and fails to disclose any error which could possibly result in prejudice. He had a fair trial.

In his reply brief defendant has sought to have us consider many asserted facts that are not in the record on appeal. Under established rules of appellate procedure such matters cannot be considered by a reviewing court. Putting them in his brief does not assist his cause.

The judgment and order are affirmed.

Ashburn, J., and McMurray, J. pro tem.,* concurred.

Appellant's petition for a rehearing was denied May 2, 1961.

---

*Assigned by Chairman of Judicial Council.