[Crim. No. 2297. In Bank.—June 10, 1920.]

## THE PEOPLE, Respondent, v. T. NIINO, Appellant.

[1] CRIMINAL LAW — APPEAL — REVERSAL OF JUDGMENT — EVIDENCE.—
The appellate court will not reverse a judgment given upon a verdict unless there is no evidence to support it, or when the evidence relied upon to uphold it is so inconsistent or improbable as to be incredible, or when it so clearly and unquestionably preponderates against the verdict as to convince the court that it was the result of passion or prejudice on the part of the jury.

[2] ID.—MURDER—MENTAL SOUNDNESS OF DEFENDANT—CONFLICT OF EVIDENCE—VERDICT CONCLUSIVE ON APPEAL.—In a prosecution for murder, where the evidence on the issue of the soundness of mind of the defendant is conflicting, the conclusion of the jury will not be disturbed on appeal.

[3] ID.—EVIDENCE—MENTAL SANITY—INTIMATE ACQUAINTANCES—DISCRETION—APPEAL.—The determination of the question as to whether or not one is an intimate acquaintance of another, and therefore competent, under subdivision 10 of section 1870 of the Code of Civil Procedure, to give his opinion as to the mental sanity of the latter, is of necessity, to a great extent, within the discretion of the trial court, and the ruling of that court will not be disturbed except where the evidence is such as to leave no just room for question that the discretion has been improperly exercised.

---

2. Weakness of mind as affecting responsibility for criminal act in homicide cases, note, 10 L. R. A. (N. S.) 999.

Responsibility for crime committed in a fit of anger, note, 10 L. R. A. (N. S.) 1032.

[4] ID.—MURDER—REQUEST FOR JAPANESE INTERPRETER—REMARK OF
COURT — LACK OF PREJUDICE.—The remark of the court during
the trial of a Japanese for murder in response to a request for an
interpreter for a witness for the defendant, that "they can all
speak English, but they won't," was not prejudicial to the sub-
stantial rights of the defendant.

APPEAL from a judgment of the Superior Court of
Kings County and from an order denying a motion for a
new trial. M. L. Short, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. E. Kilpatrick and H. Scott Jacobs for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones,
Deputy Attorney-General, for Respondent.

The following opinion was prepared by Mr. Justice Ker-
rigan of the district court of appeal, first appellate district,
while acting as justice *pro tempore* of this court in place
of Mr. Justice Melvin. It is adopted as the opinion of this
court.

THE COURT.—The defendant was convicted of murder
in the first degree. He moved for a new trial, which motion
was denied, and he was thereupon sentenced to suffer the
death penalty. He prosecutes this appeal from the judg-
ment and from the order denying his motion for a new
trial.

At the trial it was shown by the undisputed evidence
that on October 27, 1919, the defendant shot and killed a
young Japanese woman named Misco Hayashi, whom he de-
sired to marry but whose father had repeatedly refused
consent thereto. Upon the last of such refusals the de-
fendant almost immediately procured a double-barreled shot-
gun, went to the place where the young woman was at
work in a vineyard picking grapes, and there deliberately
fired two shots into her face and throat, causing almost in-
stant death.

In support of his appeal the defendant contends that the
evidence is insufficient to sustain the verdict, that the court
erred in admitting certain testimony, and that the court

and prosecuting attorney were guilty of misconduct prejudicial to the rights of the defendant.

Defendant contends that the evidence is insufficient to support the verdict. In view of the gravity of the case, we have carefully examined the record in order to learn if this contention can be maintained, and after such examination we are satisfied that it cannot. **[1]** This court will not reverse a judgment given upon a verdict unless there is no evidence to support it, or when the evidence relied upon to uphold it is so inconsistent or improbable as to be incredible, or when it so clearly and unquestionably preponderates against the verdict as to convince the court that it was the result of passion or prejudice on the part of the jury. (*People* v. *Willard,* 150 Cal. 553, [89 Pac. 124].) The record before us discloses no such case. The evidence upon the only issue of fact in the case—the soundness or unsoundness of mind of the defendant—was conflicting. Witnesses were introduced by the defendant who testified that in a town in Japan of about one thousand six hundred inhabitants, where the defendant was reared, his maternal grandfather and his mother were reputed to be insane; also that his brother and sister, as well as he himself acted queerly, and were all regarded as mentally defective. There was also evidence tending to show that the defendant a few years before the trial had contracted syphilis, that he was subject to fits, and was the victim of some nervous disturbance. A witness was also called who testified that the defendant was more excited and showed more concern over being served with summons and complaint in a justice's court suit than upon his arrest under the present charge. Two medical men, testifying as experts, after an examination of the defendant, and in answer to a hypothetical question, gave it as their opinion that the defendant was not sane on the day he shot the deceased. On the other hand, there were a number of witnesses introduced by the prosecution, intimate acquaintances of the defendant, whose opinion on this question was contrary to that of the doctors. **[2]** Under such evidence, it was clearly a question of fact for the jury to determine whether, at the time of the homicide, the defendant was sane; and their conclusion that he was, as evidenced by their verdict, will not be disturbed by this court. (*People* v. *Willard, supra.*)

The defendant's claim as to the improper admission of testimony is directed to that of six of the nine witnesses called by the prosecution and who, as intimate acquaintances of the defendant, testified that on or about the day of the homicide he was of sound mind, and is founded upon the contention that none of these witnesses was such intimate acquaintance within the meaning of subdivision 10 of section 1870 of the Code of Civil Procedure which provides that an intimate acquaintance may, upon a trial, give his opinion as to the mental sanity of a person.

One of these witnesses had known the defendant for seventeen years, and the latter had, during four or five years of that time, worked for him. He worked satisfactorily and their relations were friendly, and up to a week of the shooting he visited and associated with the defendant.

Another witness testified that he, too, had known the defendant for about seventeen years; that within that time the defendant had worked for him during four or five plowing seasons, the last occasion being about two years before the trial; that he frequently saw the defendant after that, and, in fact, had seen him the day before the shooting; that he and the defendant were on friendly terms and had often played cards together.

A third witness testified that he had known the defendant for sixteen or seventeen years; that during the first part of their acquaintance the defendant was engaged in business and during that time they seldom met, but later the defendant sold his business and went to the country, and thereafter the witness saw much of the defendant and they became well acquainted.

Still another witness testified that he had known the defendant about nine years, during which time they had worked together at different places, and were at the time the homicide was committed. Another witness was a friend and associate of the defendant for four years.

The testimony of the other witnesses introduced as to this phase of the case was similar to the evidence just briefly detailed.

These witnesses were Japanese, and each of them testified that, in his opinion, the defendant was sane on the day of the homicide. No error was committed in allowing these

persons, as intimate acquaintances of the defendant, to give their opinion upon his mental sanity. **[3]** The determination of the question as to whether or not one is an intimate acquaintance of another, and therefore competent, under subdivision 10 of section 1870 of the Code of Civil Procedure to give such opinion, is of necessity, to a great extent, within the discretion of the trial court, and the ruling of that court will not be disturbed except where the evidence is such as to leave no just room for question that the discretion has been improperly exercised. (*People* v. *Clark*, 151 Cal. 207, [90 Pac. 549].) It is plain that the court, in the instant case, did not abuse its discretion in admitting the testimony of the witnesses referred to.

During the trial a question arose as to whether or not one of defendant's witnesses should be permitted to give his testimony through an interpreter, upon which the court remarked: ''They can all speak English but they won't.'' It is claimed, on behalf of the appellant, that this observation by the court constituted misconduct which seriously affected his right to a fair trial. No such claim was made at the time of the occurrence, and the remark was not then assigned as misconduct. **[4]** Moreover, we do not regard it as such, and we cannot perceive how it could have had an influence on the jury prejudicial to the defendant's substantial rights. Nor do we find any merit in the point that the prosecuting officer indulged in an unfair imputation against defendant's counsel which was prejudicial to the defendant. If the imputation charged was made, it was unfair, but it cannot be regarded as having had any effect on the right of the defendant to a fair and impartial trial.

It follows from the foregoing that the judgment and order should be affirmed, and it is so ordered.

Shaw, J., Lawlor, J., Wilbur, J., Angellotti, C. J., Lennon, J., Olney, J., and Sloane, J., concurred.